Robert NELSON, Plaintiff-Appellant,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 16959.

United States Court of Appeals
Sixth Circuit.

Nov. 22, 1967.

Lester H. Burns, Jr., Manchester, Ky., Charles M. Tackett, Lexington, Ky., for appellant.

George I. Cline, U. S. Atty., J. T. Frankenberger, Asst. U. S. Atty., Lexington, Ky., for appellee.

Before O'SULLIVAN, PHILLIPS and EDWARDS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

This case presents the appeal of Robert Nelson from a District Court judgment which affirmed the Secretary of Health, Education and Welfare's denial of social security benefits to Nelson.

Appellant had had a grammar school education and had never received specialized training for any trade. After completing school he worked for a time in automobile assembly plants in Ohio and Indiana and then, with time out for service in the military, was employed at different jobs in the mines for some 15 years with the Stearns Coal and Lumber Company, Stearns, Kentucky. He was married and had five children. He testified that he was still able, following the injury here involved, to drive a car (on trips of between 30–60 miles) to shop, visit relatives, and fish.

On February 7, 1962, appellant, then 35 years of age, injured his back lifting heavy timbers while working in the coal mines. He continued his work, but when his back continued painful he stopped work, and in June, 1962, he had an operation to remove an injured disc. He resumed work for his former employer in September, 1962; he was given light work, but on December 13, 1962, he again stopped work. He has not worked, nor has he sought work since. He claims that pain in his back and urinary incontinence prevent him from engaging in any gainful employment. He did not explain the frequency or character of the claimed urinary incontinence, nor just how it would impair his ability to hold a job. Examination did not disclose any objective explanation for this claimed abnormality; medical opinion was that if this malfunctioning existed at all, it was neurogenic in origin.

On May 23, 1963, he made application for benefits. His application was turned down at all administrative levels and after affirmance by the Secretary of a hearing examiner's decision, suit was filed in the District Court.

At the hearing before the examiner, appellant testified and reports of some five doctors who had treated or examined him were received in evidence. The two doctors who performed the disc surgery and directed his return to work, Dr. Thompson and Dr. Angelucci, were not called, nor were reports obtained from them. As to them, appellant had told an investigator that "he would not obtain medical reports from these two doctors because of financial reasons and he is convinced they would not find him disabled, regardless of his condition." One of the reporting doctors thought appellant was 100% disabled, but that recommended surgery, with good results,

would reduce his disability to 20% or 15% and "in all probability he could return to some kind of gainful employment." Appellant said he would not gamble on another operation. The remaining reports of the doctors were either noncommittal or indicated varying degrees of partial disability not exceeding 15% or 20%. None of these thought further surgery was needed. One doctor who examined appellant in May, 1964, prior to the hearing before the examiner in August of that year stated:

"The patient was quite well developed and muscular. The entire examination was normal except for the healed operative incision on the low back and the decreased right ankle-jerk.

\* \* \* \* \* \*

"The only evidence of physical impairment that I could demonstrate on this patient the two occasions I saw him was the restriction for undue stress and strain on his back, prolonged stooping or bending. *I could see no reason why he would not be able to do at least light work with the above restrictions.*"

This doctor's report also contained the following:

"This patient has told me that he is receiving $160 a month on his children. This was when I saw him in December 1963 and he stated that he wanted reports so that he could get social security. *He also admitted that there were a lot of things that he could do but the jobs were not available for him at his home or in the vicinity of his residence.*"

Appellant denied that he had made these statements to the doctor.

■ A Doctor Charles Auvenshine from the College of Education, University of Kentucky, where he carries the title of Director of Rehabilitation Counseling, testified he had studied the medical reports, observed appellant, and heard his testimony. This witness has been called frequently in these cases, and in the case now before us his qualifications are not challenged. He testified that, with the disabilities claimed, appellant could not engage in work which involved prolonged standing, bending, heavy lifting or heavy manual labor, but he was fully capable of performing the work required for various described jobs and that such jobs were being performed in the state of Kentucky in industries within reasonable distances from appellant's residence. It was not required that it be established that there was a specific job available to plaintiff at a named employer. Lane v. Gardner, 374 F.2d 612, 617 (CA 6, 1967); Dvorak v. Celebrezze, 345 F.2d 894, 897 (CA 10, 1965).

As stated above, appellant at no time since he left his job in December, 1962, has made an attempt to find any kind of employment. He likewise refused the services of the Vocational Rehabilitation Agency. These latter circumstances are not of controlling importance, but are of significant relevance to appellant's claim that at the young age of 36 and with his minimal disabilities, he should be declared totally without useful capacities. See Lane v. Gardner, 374 F.2d 612 (CA 6, 1967); Newman v. Gardner, 376 F.2d 25, 27 (CA 6, 1967); Walston v. Gardner, 381 F.2d 580 (CA 6, 1967).

■ Familiar rules guide the discharge of our appellate function. Neither this court nor the District Judge consider the evidence de novo. We look only to see whether there is substantial evidence supporting the factual findings of the Secretary and his hearing examiner. 42 U.S.C. § 405(g). The burden is on the applicant to establish that he is entitled to the benefits of the Act. 42 U.S.C. §§ 416(i) and 423(c) (2). Justice v. Gardner, 360 F.2d 998, 1002 (CA 6, 1966); Erickson v. Ribicoff, 305 F.2d 638, 640 (CA 6, 1962). The appellant, however, did establish that he was disabled from returning to the heavy manual labor involved in his work in the coal mines. If the Secretary relies upon a claim that appellant retains ability to engage in some less burdensome occupation, it is his burden to establish that there are job opportunities reasonably availa-

ble to the applicant in the general area of his residence, which the applicant could perform with his limited capacities. May v. Gardner, 362 F.2d 616, 618 (CA 6, 1966); Massey v. Celebrezze, 345 F.2d 146, 154 (CA 6, 1965). We read the hearing examiner's decision and its affirmance as a finding that the Secretary had met his burden in this regard.

Upon review of the entire administrative record, the District Judge concluded that the Secretary's finding had substantial support. Upon like review, we agree.

Judgment affirmed.