Troy WHITT, Plaintiff-Appellant,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 17428.

United States Court of Appeals
Sixth Circuit.

Feb. 17, 1968.

Ronald W. May, Pikeville, Ky., for appellant, Howard H. Moore, Louisa, Ky., on the brief.

Moss Noble, Asst. U.S. Atty., Lexington, Ky., for appellee, George I. Cline, U.S. Atty., Lexington, Ky., on the brief.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and CECIL, Senior Circuit Judge.

O'SULLIVAN, Circuit Judge.

We review a decision of the United States District Court for the Eastern District of Kentucky, upholding the Secretary of Health, Education and Welfare's denial of disability benefits and a period of disability under Sections 223 and 216(i) of the Social Security Act, 42 U.S.C. §§ 423 and 416(i). Appellant urges that the findings of the Secretary and his hearing examiner are not supported by substantial evidence as required by Section 205(g) of the Act, 42 U.S.C. § 405(g), and that the examiner applied erroneous legal standards to the evidence. Upon review of the whole record we find substantial evidence supporting the examiner's factual findings, but must reverse the cause for further con-

sideration consistent with correct legal criteria, which the examiner failed to apply to the medical evidence.

Appellant received a third grade education and testified that he was barely able to read or write, although on previous contacts with the Social Security Administration he claimed that he could read. He worked at hard manual labor from the age of seventeen until July 28, 1962, when, at the age of thirty-seven, he discontinued working as a coal-cutting machine operator in underground mining and has not worked or sought work since. He had worked fourteen years as a miner, the last ten as a cutting machine operator, possibly the most skilled position in the mine. To operate the machine he was required to assume a duck-walking position, guiding the caterpillar-like apparatus into the coal by means of various controls and levers. This job was dangerous. The machine weighed from 1,000 to 3,000 pounds, and its operator was required to be aware of various surrounding conditions of the mine to avoid cave-ins and the like.

On March 29, 1959, one of these machines threw appellant against a post, injuring his back. This occurrence necessitated a leave of absence of nine months, after which appellant returned to work and continued working until July 28, 1962. He left work at that time, allegedly because of a sprained back, but did not seek medical attention until eighteen days later. No medical evidence was introduced substantiating this second injury. On the contrary, appellant consistently complained to examining physicians over a period of approximately two years that his reason for not working was his old 1959 injury. His claim is that because of severe pain in the spine, radiating into both legs and up the back into his neck, he is unable to engage in any "substantial gainful employment," thus meeting the statutory requirement for disability payments, 42 U.S.C. § 423(c) (2).

1. Substantial Medical Evidence.

The hearing examiner found that appellant was disabled from performing

his old job as a coal-cutting machine operator or other jobs requiring heavy physical labor. But he concluded that appellant would be able to do lighter work available in Huntington, West Virginia, such as factory sanding, buffing and glass products inspection. Appellant contends that his physical and psychological condition render him disabled from performing not only his old coal mining job, but any substantial gainful employment at all.

The medical evidence introduced to substantiate this claim was generally unexceptional, judged in the light of the Court's experience with similar cases, and can be easily summarized. Various X-rays showed no herniated or ruptured disc or other injurious condition in the back, except the well-healed 1959 fracture of his right sacroiliac joint. No examination disclosed any other disabling orthopedic defects or injuries. Movement around the waist and spinal area as well as such tests as straight leg raising disclosed that appellant's ability to make gross bodily movements was limited by his assertion of pain. No atrophy of the muscles of the thighs or calves was discovered; ankle and knee joints were normal, as well as the feet.

X-rays of the lungs did disclose a slight nodular and reticular pattern; a radiologist commented that this disclosed a "category I type of simple pneumoconiosis." This is a common disease among coal miners, caused from inhalation of coal dust. It has the effect of limiting the capacity of the lungs in transferring oxygen to the blood. It is significant in this regard that appellant did not quit work in the mines on account of any pulmonary condition, and yet his employment required substantial physical exertion. Nor did he complain to his various medical examiners of any respiratory ailment, although he did testify to shortness of breath.

Appellant testified that he takes three kinds of pills every four hours, for his heart, his nerves and for pain. He said he spends most of his time in bed to calm his nerves and that he is unable even to do work around the house. The reports of various doctors described his psychological state as "nervous and apprehensive," "severe anxiety and depression," and "chronic anxiety state." Dr. Donald I. George concluded from a psychiatric examination that:

"His whole motivation is aimed to convince one of his disability and blame it all on the accident. He is pious, overly religious and is poorly motivated to change. * * * He is competent to handle funds.

"Diagnosis: Psychophysiologic nervous system reaction with some conversion features.

"Comment: This emotional problem is of a moderate degree and is an overlay to the physical problem and the combination of the two does make for a significant disability."

Dr. William C. Roland, specialist in orthopedic surgery, examined appellant on February 22, 1963, and on May 19, 1964. After the latter examination, he diagnosed "conversion hysteria," and commented as follows:

"This patient was studied February 22, 1963, * * *. My impression at that time was that the patient had some evidence of nerve root irritation and that further diagnostic efforts, such as lumbar myelography, should be carried out. Mr. Whitt's symptomatology has changed markedly since his original examination in this office. The functional overlay is particularly marked and makes evaluation of any residual physical impairment most difficult. Upon reviewing my original examination and, again, on reviewing the present findings on examination, it is noteworthy that the complaints of the patient are not verified by abnormal physical findings."

Estimates of appellant's incapacitation ranged from one physican's diagnosis of "totally incapacitated," which he changed upon later examination to "unable to do manual labor," to "partial permanent disability of 40 percent," and Dr. George's conclusion, noted above,

that appellant's physical and emotional difficulties did present "a significant disability."

 Upon reviewing the medical evidence of record, we cannot say that the examiner's decision that appellant was disabled from his coal mining job, but not from performing lighter tasks, is without substantial support. 42 U.S. C. § 405(g). Neither this Court nor the District Judge consider the evidence de novo. The burden is on the applicant to establish that he is entitled to the benefits of the Act. 42 U.S.C. §§ 416 (i) and 423(c) (2). Nelson v. Gardner, 386 F.2d 92 (6th Cir. 1967); Justice v. Gardner, 360 F.2d 998, 1002 (6th Cir. 1966); Erickson v. Ribicoff, 305 F.2d 638, 640 (6th Cir. 1962).

### 2. Erroneous Legal Standards Applied to Medical Evidence.

 In his opinion, the hearing examiner stated:

"The Act requires that the impairment be 'medically determinable,' that is, the existence of an impairment must be established by *objective* medical, clinical, or laboratory evidence. (Emphasis supplied.)

\* \* \* \* \* \*

"The *objective* medical evidence does not support a conclusion that the claimant has a significant physical impairment. (Emphasis supplied.)

\* \* \* \* \* \*

"The *objective* medical evidence will support only \* \* \*." (Emphasis supplied.)

The Act nowhere states a requirement that a claimant establish his disability by "objective" medical evidence. In a case such as the present one, much of the evidence was subjective in nature, appellant's primary complaint being that of incapacitation because of extreme pain. This Court, as well as others, has considered the infection of an examiner's findings by such an erroneous legal standard to be reversible error, no matter what our own view be as to the cor-

rectness of his ultimate conclusion. See Branham v. Gardner, 383 F.2d 614 (6th Cir. 1967); Walston v. Gardner, 381 F. 2d 580 (6th Cir. 1967); Ross v. Gardner, 365 F.2d 554 (6th Cir. 1966); Polly v. Gardner, 364 F.2d 969, 972 (6th Cir. 1966); and Miracle v. Celebrezze, 351 F.2d 361, 374 et seq. (6th Cir. 1965). As we said in Ross v. Gardner, supra, 365 F.2d at 558:

"Obviously, the Hearing Examiner in this case, as in other cases coming to our attention, assumed that 'medically determinable' means 'supported by *objective* clinical findings and reports.' The Act means nothing of the kind.

\* \* \* \* \* \*

"Pain, unaccompanied by any objectively observable symptoms, may be so real and so intense as to be disabling, and will support a claim for disability benefits. Ber v. Celebrezze, 332 F.2d 293 (C.A. 2)."

We note that recent amendments to the Social Security Act (see Pub.L. No. 90–248, § 158 (Jan. 2, 1968) 81 Stat. 868 (36 U.S.L.Week 39, 54 (Jan. 16, 1968) ) have amended Section 223(c), 42 U.S.C. § 423(c), to read:

"(1) The term 'disability' means—

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment \* \* \*.

\* \* \* \* \* \*

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are *demonstrable by medically acceptable clinical and laboratory diagnostic techniques*." (Emphasis supplied.)

These amendments are applicable to the instant case, as the present civil action, under § 158(e) of the amending Act, supra, is a "civil action \* \* \* commenced under section 205(g) of the Social Security Act \* \* \* and the decision in such civil action has not become final \* \* \*." We conclude, however, that while these amendments con-

firm the examiner's requirement that "the existence of an impairment must be established by \* \* \* medical, clinical, or laboratory evidence," they do not support his insistence that the medical evidence be "objective." Hence our need to reverse is not obviated by these recent amendments to the Act.

■ In this connection, we think it appropriate to point out other respects in which the examiner applied criteria which we have recently held to be erroneous. In his evaluation of the psychological evidence, he stated the standards to be applied as follows:

"Furthermore, in the considered opinion of the Hearing Examiner, to approach and meet the level of severity contemplated by the Act for the type of disorder found in neurosis, there must be findings of unacceptable social behavior, severe persistant depression, gross errors in judgment and reasoning, insomnia, inability to concentrate, marked loss of weight with malnutrition, or other severe somatic manifestation of a *deep seated intractable* psychogenic disorder." Emphasis supplied.)

The examiner also quoted from Social Security Regulations, 20 C.F.R. 404.-1519(c) (2) (ii), and concluded that:

"The evidence does not support a conclusion that the claimant as a result of his neurosis had suffered social, personal, or occupational regression of the severity contemplated by the Regulations."

In Branham v. Gardner, supra, we held language identical to that first quoted above from the examiner's opinion to be reversible error. We said:

"The foregoing is a completely erroneous statement of what the Act contemplates, since there is no indication in the language of the statute that such findings are necessary." 383 F.2d at 628.

We also noted that the mentioned regulation "does not state the requirements that must be met \* \* \* but is only advisory or suggestive \* \* \*." Id.,

at 627. Likewise, we hold that the examiner in the present case erred in placing undue reliance upon the regulation, and in his above-mentioned requirements relative to neurosis. See Marion v. Gardner, 359 F.2d 175, 181 (8th Cir. 1966).

### 3. Other Claimed Errors.

■ We shortly review appellant's remaining assertions of error. He contends that the Secretary, after finding appellant "no longer able to operate a cutting machine in a coal mine," did not sustain his burden of showing "there are job opportunities reasonably available to the applicant in the general area of his residence, which the applicant could perform with his limited capacities. May v. Gardner, 362 F.2d 616, 618 (CA 6, 1966); Massey v. Celebrezze, 345 F.2d 146, 154 (CA 6, 1965)." Nelson v. Gardner, supra, 386 F.2d at 94–95. Appellant cites the case of Williams v. Celebrezze, 359 F.2d 950 (4th Cir. 1966), which held that the trial examiner's mere reference to the opinion of a vocational expert with respect to the jobs the claimant could perform, was not a sufficiently definite statement of the examiner's own findings. The Court said, "We may not speculate as to his findings." In the instant case the examiner definitely incorporated the expert's conclusions as his own. After summarizing the expert's findings he said: "The Hearing Examiner \* \* \* finds that the claimant has skills and abilities \* \* \* as stated above \* \* \*." We find this sufficiently definite. See Newman v. Gardner, 376 F.2d 25, 26 n. 1 (6th Cir. 1967).

■ Appellant also questions the adequacy of the *assumption* given the expert witness as to the appellant's existing capacities. The examiner instructed the witness that "the claimant can no longer work in a coal mine or engage in heavy labor, \* \* \* that he is very nervous." The expert was also instructed to base his opinion on the testimony and record in the case, and observation of the claimant during the hearing. He

indicated at one point that he also took into account the psychiatrist's conclusion that appellant had a significant disability due to his combined emotional and physical problems. We think the expert was thereby given sufficient assumption of appellant's capabilities.

Appellant's final contention is that jobs available in Huntington, West Virginia, are not within "the area of his residence," i. e., Friendly Lick Branch, Martin County, Kentucky. While we do not think the Secretary need have shown jobs to be available in appellant's home town, see, e. g., Newman v. Gardner, supra, 376 F.2d at 26; Massey v. Celebrezze, supra, 345 F.2d at 155, we need not consider the question in that the aforementioned amendments to the Social Security Act have clarified the issue by providing that:

> "(A) an individual * * * shall be determined to be under a disability only if his * * * impairments are of such severity that he is not only unable to do his previous work but cannot * * * engage in any other kind of substantial gainful work *which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives* * * *. For purposes of the preceding sentence * * * *'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives* or in several regions of the country." Pub.L. No. 90–248, § 158(d) (2) (A) (Jan. 2, 1968) (36 U.S. L. Week 39, 54 (Jan. 16, 1968)) (Emphasis supplied.)

In this case, we again deal with a young man 37 years of age whose address to us, to the District Judge and to the Secretary, asks that he be found without any useful capacities. See Nelson v. Gardner, supra, 386 F.2d at 94. He argues that he has met his burden in this regard notwithstanding that he has not, since he left his job in 1962 without then reporting any untoward incident, made any effort to find any kind of employment, and his evidence of disabling pain arises from his subjective assertion that it exists. We are of the opinion that there is substantial record evidence from which it could be found that he has not made out a case for recovery. We must reverse, however, because the examiner employed impermissible standards in arriving at his conclusion.

The judgment is reversed, with direction that the matter be remanded for reconsideration by the Secretary, free of the errors noted in this opinion.