Carmen Reyes ACOSTA, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.

Civ. No. 390–69.

United States District Court, D. Puerto Rico.

June 4, 1970.

Isaias Rodriguez Moreno, San Juan, P. R., for plaintiff.

Asst. U. S. Atty. Wally De La Rosa, San Juan, P. R., for defendant.

## MEMORANDUM AND ORDER

CANCIO, Chief Judge.

This plaintiff is before the court seeking review of the decision of the Secretary of Health, Education and Welfare, denying an application for disabled widow's insurance benefits filed by plaintiff Carmen Reyes Acosta, for failure to establish a claim for disability insurance benefits as a widow, under 42 U.S.C. section 423(d) (2) (B) of the Social Security Act.

Plaintiff asks the court to decide whether, from the record as a whole, the decision of the Secretary of Health, Education and Welfare that plaintiff failed to establish that she was unable to engage in any substantial gainful activity by reason of her alleged impairments, and that she had sufficient quarters of coverage, is supported by substantial evidence.

■ The evidence of the record fully supports the denial of the plaintiff's claim. The evidence shows the plaintiff had no social security account number of her own (Tr. 44). There was no evidence that she ever worked in any employment except for one week or that she had earnings that were covered under the Social Security Act. Plaintiff testified that she had always been a housewife and had never worked outside her home (Tr. 32). Since plaintiff had no wages or other earnings reported, she has no quarters of coverage established under the Social Security Act and her claim rests entirely on her benefits as a disabled widow of her deceased husband.

In essence, plaintiff claims she became disabled in 1951, as defined in Title 42 U.S.C. section 223(b) of the Social Security Act, as amended, due to generalized arthritis, deafness and thyroid trouble, headaches, and palpitations of her heart.

Dr. Zenon A. Rivera-Biascoechea, an internist, examined the plaintiff in consultation May 17, 1968 (Tr. 74–75). He stated that she denied any nervousness, palpitations of heart or weight loss, that she was slightly obese,[1] she could move around and about and bend without difficulty. Otherwise, she had no limitation of motion of any of her extremities and no limitation of back motion. She had normal auditory canals. The heart rate was 64, regular and without murmurs.

Dr. Paul Roura Sepulveda, orthopedic surgeon, diagnosed that plaintiff walked well and without difficulty, was sym-

---

1. Plaintiff weighed 144 lbs. and was 61½ inches tall.

metric and well developed, had normal muscle tone along the lumbar and dorsal spine, had positive reflexes, good pinch and grasp with both hands. Dr. Roura Sepulveda also stated that plaintiff had normal functional capacity in walking, sitting, bending, squatting, stooping and kneeling.

As stated by Dr. Rafael B. Diaz Bonet, roentgenologist, (Tr. 79), there was no X-ray evidence of joint or other bony destruction to substantiate the plaintiff's vague complaints with respect to all her joints.

In enacting benefits for disabled widows, Congress made abundantly clear its intent as to what the standard of disability necessary to establish entitlement to such benefits is. Thus, in reporting out the Social Security Amendments of 1967, the Committee on Ways and Means of the House of Representatives stated as follows:

> "Under your committee's bill, a new test of disability which is *more strict* than the definition which applies to workers would be provided for purposes of widow's and widower's benefits. This new test is discussed in the statement on 'The Definition of Disability.'"

> " \*   \*   \*   \*   \*   \* "

> "The bill would also provide reduced benefits (as discussed in the statement on benefits for disabled widows and widowers) for certain disabled widows (including surviving divorced wives) and disabled dependent widowers under an initial test of disability that is different from that for disabled workers and childhood disability beneficiaries. *Under this test the Secretary of Health, Education and Welfare would by regulation establish the severity of impairment which may be deemed to preclude an individual from engaging in any 'gainful activity'. (As opposed to 'substantial gainful activity').* An individual whose impairments meet the level of severity established by the regulations of the Secretary would generally be found to be disabled, although, of course, if other evidence establishes ability to engage in substantial gainful activity despite such impairments, he would not be found disabled; and individuals whose impairments do not meet this level of severity may not in any case be found disabled. Once an individual meets the initial test and is found disabled, he would be considered disabled as long as his impairment precluded his engaging in substantial gainful activity." (Emphasis supplied). H.R. No. 544, pages 26, 31, 90th Cong., 1st Sess.

So, too, the Senate Finance Committee stated in pertinent part:

> "The bill would also provide benefits (as discussed in the statement on benefits for disabled widows and widowers) for certain disabled widows (including surviving divorced wives) and disabled dependent widowers under a *test of disability that is somewhat more restrictive than that for disabled workers and childhood disability beneficiaries. The determination of disability in the case of a widow or widower would be based solely on the level of severity of the impairment. Determinations in disabled widow and widower cases would be made without regard to nonmedical factors such as age, education, and work experience, which are considered in disabled worker cases.* Under this test the Secretary of Health, Education, and Welfare would by regulation establish the severity of impairment which may be deemed to preclude an individual from engaging in any 'substantial gainful activity' (as opposed to 'gainful activity' as provided in the House bill.) An individual whose impairments meet the level of severity established by the regulations of the Secretary would generally be found to be disabled, although, of course, if other evidence establishes ability to engage in substantial gainful activity despite such impairments, he would not be found disabled; and individu-

als whose impairments do not meet this level of severity may not in any case be found disabled." (Emphasis supplied.) Sen.Rpt. No. 744, pages 49–50, 90th Cong. 1st Sess.

■ Title 42, U.S.C. Section 223(d) (2) (B), which authorizes the Secretary to determine the levels of severity which demonstrate an inability to engage in gainful activity is plainly valid. United States v. Rock Royal Co-op., Inc., 307 U.S. 533, 574, 59 S.Ct. 993, 83 L.Ed. 1446 (1939); Opp Cotton Mills v. Administrator, 312 U.S. 126, 144–145, 61 S.Ct. 524, 85 L.Ed. 624, (1941); Yakus v. United States, 321 U.S. 414, 423, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Iske v. United States, 396 F.2d 28, 31 (10 Cir., 1968); White v. United States, 395 F.2d 5, 9 (1 Cir., 1968); Willapoint Oysters v. Ewing, 174 F.2d 676 (9 Cir., 1949), cert. denied 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527 (1950); reh. denied 339 U.S. 945, 70 S.Ct. 793, 94 L.Ed. 1360 (1950). In particular, authorization to the Secretary to establish appropriate regulatory standards for entitlement to Title II benefits has been recognized. Haberman v. Gardner, 296 F.Supp. 661 (S.D.N.Y., 1968).

As set forth above, the Secretary has listed the requisite level of severity for various impairments in the Regulations. These Regulations were issued after due notice of proposed rule making was given. 33 FR 7244 (May 16, 1968). Thereafter the Regulations were duly adopted and promulgated. 33 FR 11749 (August 20, 1968). See 20 CFR 404.1501 et seq. Plaintiff asserts herein that she is disabled because of thyroid condition, arthritis, deafness and poor vision. A comparison of her condition as diagnosed by the doctors who examined her with the standards set forth in the Regulations, makes clear that she does not meet the requisite level of severity.

The persuasive medical evidence of record fails to indicate the presence of a significant arthritic disease as contemplated by the category of musculoskeletal system impairments or a thyroid condition as contemplated under endocrine impairments. The medical reports of the three doctors who examined the plaintiff in 1968 showed no heart abnormalities of the severity contemplated by the listings.

It is clear from the evidence of record that plaintiff does not have medically determinable impairments which meet or equal the requisite level of severity specified in the Listing of Impairments contained in the Appendix to Subpart P of Social Security Regulations No. 4. Consequently, plaintiff has not met her burden of proof to establish her claim as a disabled widow. Weaver v. Gardner, 394 F.2d 110 (6 Cir. 1968); Whitt v. Gardner, 389 F.2d 906 (6 Cir. 1968); McMullen v. Gardner, 382 U.S. 854, 86 S. Ct. 106, 15 L.Ed.2d 92 (1965); reh. denied 389 U.S. 922 (1965); Bradshaw v. Ribicoff, 209 F.Supp. 79 (M.D.N.C.1962), aff'd 312 F.2d 746 (4 Cir. 1963).

■ The plaintiff has alleged impairments of various body systems. This is not unexpected in cases of this type. Indeed, Congress was aware that such complaints would constitute the basis of many disabled widows' claims. For this reason the standard of disability for *disabled widows was* made stricter. In ordinary disability cases it is well established that a plaintiff's subjective complaints cannot provide the basis for a favorable finding of disability. Robles v. Finch, 409 F.2d 84 (1 Cir. 1969); Franklin v. Secretary of Health, Education and Welfare, 393 F.2d 640 (2 Cir. 1968); Durham v. Gardner, 392 F.2d 168 (4 Cir. 1968). The extent and severity of the plaintiff's complaints are not supported by the medical evidence. Accordingly, if plaintiff were a disabled worker, she could not prevail on the basis of her allegations. Obviously, then, she cannot prevail as a disabled widow.

It is therefore ordered that the complaint be and it is hereby dismissed.

It is so ordered.