Josephine LANKFORD

v.

Caspar W. WEINBERGER, Secretary of
Health, Education and Welfare.

Civ. A. No. 8249.

United States District Court,
E. D. Tennessee, N. D.

Oct. 31, 1973.

H. Calvin Walter, Walter, Gilbertson & Claiborne, Knoxville, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., Robert E. Simpson, Asst. U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Plaintiff, pursuant to Title 42 U.S.C. § 405(g), seeks a review of an adverse decision by the Secretary of Health, Education and Welfare denying her disability insurance benefits under Title 42 U. S.C. § 423 of the Social Security Act. Both parties have moved for summary judgment on the ground that the sole question is whether the decision of the Secretary is supported by substantial evidence.

Plaintiff has met all requirements for disability benefits except for establishing that she was under a disability as defined by the Social Security Act during the period in which she was insured under the Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months. The inability to engage in any substantial gainful employment exists only if the impairments are of such severity that the plaintiff, considering her age, education and work experience, cannot engage in any kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in her immediate locale, or whether a specific job vacancy exists for her, or whether she would be hired if she had applied for work. A physical or mental impairment is one that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. A claimant is not considered under a disability unless he furnishes such medical or other evidence of such disability as the Secretary may require.

Plaintiff, a fifty-one year old female, has completed high school and from 1967 until April 1971 was employed as a laboratory assistant at Oak Ridge National Laboratory. Prior to that time, plaintiff had been employed as a practical nurse, a chemical operator, and as a riveter. Her duties at the facility related to caring for experimental animals which required her to perform such physical tasks as changing cages, cleaning rooms, climbing ladders and other general tasks incident to maintaining a sterile research facility.

Plaintiff's testimony reflects that in 1969 she suffered a back injury which required surgery. Thereafter, she was restricted to limited work activities, but upon her request, the doctor released her to return to work. The record further shows that she subsequently reinjured her back in April, 1971 and was required to again limit her work activities and eventually quit her job.

Plaintiff testified that since 1969 she has suffered continuing pain in her back, had a history of bronchiectasis, and at times experienced drowsiness. However, she stated that she was taking

Darvon for pain and Biphetamine as a stimulant to counteract her sleepiness. In response to the questions of the Hearing Examiner, plaintiff further testified that while she does general housework, she cannot use the vacuum cleaner or perform tasks that would require climbing, pushing and pulling.

The medical reports submitted by John T. Purvis, M.D., show that he first examined plaintiff on July 11, 1969 when she complained to him of pains in the neck and back regions. Plaintiff's back flexion was limited to 30°–40° with pain in the upper back and right leg. Leg raising was limited on the left to 30° due to hip pain and straight leg raising was similarly so restricted. Dr. Purvis' impression was that plaintiff suffered from a herniated nucleus pulposus with psychogenic overlay and recommended hospitalization for further testing. The doctor's final diagnosis was degenerative joint disease of the lower lumbar.

In August, 1969, plaintiff was hospitalized and underwent back surgery. A herniated nucleus pulposus was removed. However, the record reflects that plaintiff subsequently began experiencing a recurrence of pain and was readmitted to the hospital for a myelography. The report of Dr. Purvis, dated April 9, 1970, reflects that plaintiff was experiencing pain to the back region. This was again diagnosed as degenerative joint disease of the lower lumbar.

Plaintiff returned to Dr. Purvis in July, 1970 and sought to adjust her working conditions. The record reflects that Dr. Purvis advised her employer that she should not participate in any prolonged bending for longer than two to four hours per eight hour shift and limited her lifting to thirty pounds.

Doctor Purvis' remaining reports of February 20, 1970 and February 23, 1971 show that plaintiff was "going to have to live with this pain" and that further surgery would not aid her condition.

The medical report of Dennis Coughlin, M.D., an orthopedic surgeon, indicates that plaintiff experiences a 20% restriction in motion of her right hip. X-rays showed a slight degree of loss of normal cervical lordosis in a direct lateral view of the neck and a slight narrowing at the lumbosacral level. The remainder of plaintiff's examination was normal. Dr. Coughlin's diagnosis was: (1) strain of the neck and lower back; (2) post-operative lumbarlaminectomy; (3) early degenerative arthritis of the right hip with cystic change in the head of the right femur. Dr. Coughlin saw the primary problem to be plaintiff's back injury and resultant surgery from which there were only fair results. The primary cause of her pain was a cyst formation on the femur.

As a consequence of this examination, Dr. Coughlin indicates that plaintiff suffers a substantial degree of disability and has reached maximum recovery from her 1969 surgery. In the doctor's opinion, she suffers 15% disability to the body as a whole and is experiencing degenerative wear and tear in the right hip. Dr. Coughlin concluded that it would be hazardous for plaintiff to return to work at Oak Ridge but indicated that she could perform sedentary work, lifting ten pounds maximum.

The final medical report was that of Thomas Prince, M.D., plaintiff's family physician. This report reflects that plaintiff had a history of bronchitis and bronchiectasis. On June 27, 1972, she underwent a bronchoscopy which revealed acute and chronic inflammation. In an undated report (Exhibit 19), Dr. Prince indicated plaintiff could never return to work.

The medical evidence shows therefore that plaintiff suffers both from chronic and acute bronchiectasis and from a degenerative lumbar condition occasioned by her 1969 back injury and inadequate recovery from her subsequent surgery. While one physician, Dr. Prince, concluded that plaintiff could never return to work, both Doctors Purvis and Coughlin indicated that she could work on a limited or sedentary basis. However, the record clearly re-

flects, and the Hearing Examiner so found, that plaintiff could not return to the work which she had previously performed. Therefore, it is the opinion of the Court that the finding that plaintiff suffered a medically determinable physical impairment is supported by substantial evidence.

Nevertheless, it was the opinion of the Hearing Examiner that notwithstanding plaintiff's physical impairments, she retained the residual capacity to engage in other substantial employment and was not, therefore, disabled under the Social Security Act. To support this finding, the Hearing Examiner relied upon the medical evidence heretofore summarized and the testimony of Dr. William M. Holbert, a vocational expert who testifies regularly in these hearings for a fee paid by the Social Security Administration and who has become a central figure in these cases.

Doctor Holbert testified that he had studied the medical reports and had familiarized himself with all the other pertinent exhibits in plaintiff's case. He further stated that he had been present throughout the proceeding and had heard plaintiff testify as to her age, education, work history, and physical condition.

In response to questions posed by the Hearing Examiner, Dr. Holbert testified that, based upon the assumed finding that plaintiff suffered from bronchiectasis which would prohibit her from working in a dusty atmosphere, and based upon the assumption that plaintiff suffered from a back impairment which would limit her to sedentary work as was indicated by Dr. Couglin, plaintiff nevertheless retained the residual capacity to perform substantial gainful employment, and that such employment existed in the region.

Doctor Holbert stated that the types of sedentary jobs available in the area were so-called "bench jobs such as custom finishing, inspecting and drill press work." He further stated that some 30,000 strictly sedentary jobs were available in the Greater Knoxville area, which required primarily hand-eye coordination. However, each of the jobs referred to by Dr. Holbert admittedly would require the employee to remain on the job for a full eight-hour shift.

Upon this evidence, the Hearing Examiner found that plaintiff retained the residual capacity to engage in occupational undertakings other than her former employment. He further concluded that such jobs exist in significant numbers in several regions of the country. Accordingly, the Hearing Examiner found that plaintiff failed to establish that her impairments prevented her from engaging in any substantial gainful activity and that, therefore, she was not under a disability as defined by the Act.

Plaintiff's primary contention in this action is that the Hearing Examiner ignored much of the proof in reaching his conclusion that plaintiff was not compensably disabled. Specifically, plaintiff contends that in light of Dr. Purvis' testimony that she could not participate in prolonged bending for periods exceeding two to four hours per eight-hour shift and given the report of Dr. Prince that plaintiff was totally disabled, the Hearing Examiner failed to consider the testimony of Dr. Holbert to the effect that all the jobs he discussed required the employee to work an eight-hour shift. Plaintiff further argues that the Hearing Examiner failed to consider the fact that all the jobs mentioned by Dr. Holbert would require the employee to work around industrial fumes and dust. It is also contended by plaintiff that no consideration was given to the cumulative impact, especially as it relates to pain, of plaintiff's impairments which would clearly demonstrate a compensable disability.

■ The controlling consideration of the case is whether the finding that plaintiff could engage in substantial gainful activities is supported by substantial evidence.

■ While the burden is on the claimant to establish the existence of a physical impairment, it is the rule that the burden is on the Secretary to establish

that there are opportunities for employment reasonably available to claimant in the general area of his residence. (Nelson v. Gardner, 386 F.2d 92 (6th Cir. 1967); Gray v. Finch, 427 F.2d 336 (6th Cir. 1970)). This burden is carried when the Secretary adduces at least some competent and credible evidence from which it can be found that the claimant is capable of actually performing some type of work. (Jarvis v. Ribicoff, 312 F.2d 707 (6th Cir. 1963); Gray v. Finch, supra; Goad v. Finch, 426 F.2d 1388 (6th Cir. 1970); Salyer v. Richardson, 345 F.Supp. 1209 (W.D. Va.1972); cf. Jones v. Celebrezze, 321 F.2d 192 (6th Cir. 1963)).

 In the case under consideration the Hearing Examiner listened to extensive testimony given by Dr. Holbert, the vocational expert, who had thoroughly familiarized himself with plaintiff's situation. The Hearing Examiner further reviewed the reports of the three physicians who had examined plaintiff. Her family doctor stated that plaintiff was totally disabled. Dr. Prince encouraged plaintiff to remain as active as possible but limited her to lifting a maximum of thirty pounds and suggesting that she not perform tasks that would require bending for prolonged periods exceeding two to four hours per eight-hour shift. The third physician, an orthopedic surgeon, indicated that plaintiff could perform sedentary work.

That there existed conflicts in the evidence presented at hearing cannot be disputed. It is difficult for this Court to say to what extent the Hearing Examiner credited the testimony of these experts. However, it is the Hearing Examiner and not the Court that is charged with resolving the possible conflicts in evidence. (Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L. Ed.2d 842 (1971); Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964); cf. Miracle v. Celebrezze, 351 F.2d 361 (6th Cir. 1965)). Accordingly, we are of the opinion that although the findings are repetitive and prolix, the evidence is sufficient to sustain the conclusion of

the Hearing Examiner that plaintiff's physical impairments are not sufficient to prevent her from engaging in substantial gainful activity for any continuous period of time.

As to plaintiff's contention that the Hearing Examiner failed to consider plaintiff's claim of pain and the cumulative effects of her other disabilities, we are of the opinion that the allegation is without merit. The record adequately reflects that the Examiner considered all of plaintiff's testimony as well as the reports of the various medical experts who examined and tested plaintiff. The resolution of this evidence, as previously indicated, is within the Examiner's province. Accordingly, as to these contentions, the decision below is supported by substantial evidence.

It is, therefore, ordered that defendant's motion for summary judgment be, and same hereby is, granted, and that plaintiff's motion be, and same hereby is, denied. (Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971); Ross v. Richardson, 400 F.2d 690 (6th Cir. 1970); Ragan v. Finch, 435 F.2d 239 (6th Cir. 1970), cert. den. 402 U.S. 986, 91 S.Ct. 1685, 29 L.Ed.2d 152 (1971)).