Everett SLAVEN, Plaintiff,

v.

**Patricia R. HARRIS, Secretary of Health and Human Services, Defendant.**

No. C–3–79–203.

United States District Court, S. D. Ohio, W. D.

Feb. 19, 1981.

Joseph E. Kane, II, Asst. U. S. Atty., Columbus, Ohio, for defendant.

### DECISION AND ENTRY ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION IN PART AND OVERRULING SAME IN PART; PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT OVERRULED; CASE REMANDED TO DEFENDANT FOR TAKING OF FURTHER TESTIMONY; TERMINATION ENTRY

RICE, District Judge.

The captioned case came to be heard upon Plaintiff's objections to the Report and Recommendation of the Magistrate, recommending that the Plaintiff's Motion for Summary Judgment be denied and that the Defendant's Motion for Summary Judgment be sustained. This is an action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the decision of the Secretary of Health and Human Services denying Plaintiff's claim for disability benefits and supplemental income under 42 U.S.C. §§ 423, 1381.

The matter was referred to the Magistrate pursuant to 28 U.S.C. § 636(b)(1). Upon cross motions for summary judgment, the Magistrate found that the Secretary's decision that Plaintiff was not "disabled", within the meaning of the statute, 42 U.S.C. §§ 423(d), 1382(c), was supported by substantial evidence, 42 U.S.C. § 405(g), and, therefore, is conclusive.

Specifically, the Magistrate found, as did the Administrative Law Judge (ALJ), below, that Plaintiff did suffer from medical impairments (primarily, cervical vertebral arthritis), but that he retained sufficient residual functional capacity to return to certain vocationally relevant past work (being Plaintiff's prior work, in 1966–67, as a grinder and punch press operator). The Magistrate's felt that, with substantial evidence supporting this conclusion in the record, it followed that Plaintiff had failed to establish a *prima facie* case of disability before the ALJ. Therefore, the Magistrate

Daniel L. Manring, Columbus, Ohio, for plaintiff.

recommended that Plaintiff's Motion for Summary Judgment be overruled, and that Defendant's Motion for Summary Judgment be sustained.

Plaintiff generally objects to the Magistrate's Report for the reasons set forth in Plaintiff's Motion for Summary Judgment, and also specifically objects on three individual grounds. First, Plaintiff says the Magistrate erred in requiring proof of inability to perform in *any* vocationally relevant past work as part of Plaintiff's establishment of a *prima facie* case of disability, since the standard is only proof of inability to perform "customary" or "usual" work. Second, Plaintiff says the Magistrate erred in requiring an "objective diagnostic finding" that Plaintiff suffered from disabling pain, rather than simply *some* medical evidence corroborating Plaintiff's subjective claim of pain. Finally, Plaintiff says the Magistrate erred in concluding that Plaintiff's claim of mental impairment was "unsubstantiated", in view of the report of Dr. Goldsmith which was made a part of the record before the Appeals Council, below, after the ALJ had rendered his decision.

Proceeding in reverse order, Plaintiff's third specific objection is not well taken. The Magistrate said:

Plaintiff's allegation of a psychiatric impairment was unsupported at the time of the [ALJ] hearing. . . . In considering Dr. Goldsmith's report, the Appeals Council determined that the new material did not establish a more severe sustained loss of function than the evidence considered by the ALJ. Thus, Plaintiff's claim of a *psychiatric impairment remains unsubstantiated* even in light of the new evidence.

(Magistrate's Report at 4–5, emphasis added.) Upon examination of the Goldsmith report, and the manner of its consideration by the Appeals Council and the Magistrate, it is clear that the Magistrate meant "psychiatric *disability*" rather than "psychiatric *impairment*." Goldsmith's conclusion that Plaintiff was suffering from an abnormal psychological condition is uncontroverted. This establishes the existence of a mental

impairment under the statute. 42 U.S.C. § 423(d)(3) However, Goldsmith's conclusion of *disability due to such mental impairment* was expressly conditioned on the "objective" existence of Plaintiff's claimed "*medical* problems," and *medical* inability to perform manual work (T. 8). As the Appeals Council said (T. 3) and the Magistrate noted, the mental impairment indicated by the Goldsmith report does not, in and of itself, increase the loss of function due to medical causes which were recognized by the ALJ. If the loss of function due to medical causes did not amount to disability, as the ALJ had concluded, and there was not additional loss of function due to mental causes, then there would simply be no disability due to either medical impairment or mental impairment, or both.

Plaintiff's second objection is also not well taken. The Magistrate said:

While pain alone may be disabling, [citation omitted], it is not supported in this case by the required objective diagnostic finding contained in the record. *Floyd v. Finch*, 441 F.2d 73 (6th Cir. 1971); *Walters v. Gardner*, 397 F.2d 89 (6th Cir. 1968).

(Magistrate's Report at 3–4.) Plaintiff says that *objective* evidence of disabling pain is not required in this Circuit (primarily, because some forms of disabling pain lack objectively demonstrable symptomatology), and that Plaintiff may prove his disability by subjective claims, "*if supported by some evidence developed through medically acceptable techniques.*" 42 U.S.C. § 423(d)(3); *Whitt v. Gardner*, 389 F.2d 906 (6th Cir. 1968). While this Court cannot share in Plaintiff's certainty regarding the absence of a requirement for "objective evidence" in this Circuit, *see, Walters v. Gardner*, 397 F.2d 89, 91 (6th Cir. 1968) (questioning such interpretation of *Whitt, supra* ), it is concluded that the Magistrate's statement, when taken as a whole, does not differ from the standard which Plaintiff would have this Court follow. A "diagnostic finding" is, in itself, *subjective* evidence since, in most cases, it represents the *personal assessment* of an attending physician, regard-

ing the condition of his patient, based upon other evidence, both objective (e. g., X-rays) and subjective (e. g., the patient's statement about how he feels). Thus considered, the attachment of "objective" to "diagnostic finding" merely requires that the "support" for Plaintiff's subjective claim of pain come from "medically acceptable techniques," i. e., competent examination or clinical observation by an *independent and objective* physician, rather than from a medically unacceptable technique such as *self-diagnosis* (or, indeed, diagnosis by a physician who might give Plaintiff's subjective claim more weight than is due under all diagnostic circumstances). In no sense, does the Magistrate's statement suggest (as Plaintiff appears to contend) that Plaintiff could not succeed unless he presented tangible and direct evidence of intangible pain.

Plaintiff's first objection also lacks merit. Plaintiff agrees that the Magistrate correctly articulated the law regarding a claimant's burden of proof by the following language:

> [O]nce Plaintiff establishes a *prima facie* case of disability, the burden of going forward with evidence shifts to the Secretary. [citation omitted] A *prima facie* case is established once it is proven that Plaintiff is unable to perform his *customary occupation* [emphasis added] due to medical condition.

(Magistrate's Report at 2–3.) However, Plaintiff says that the Magistrate's misapplication of those principles is evidenced by the following language:

> [T]he ALJ correctly determined that Plaintiff could return to his *vocationally relevant past work* [emphasis added]. Therefore, Plaintiff did not prove a *prima facie* case of disability.

(Magistrate's Report at 5.) Plaintiff says that "vocationally relevant past work" is not equivalent to "customary occupation," and its use places a higher burden of proof upon a claimant in establishing a *prima facie* case of disability. Specifically, with reference to the "past work" at issue, herein (being Plaintiff's job in 1966–67 as a grinder and punch press operator), Plaintiff

says that its brevity and remoteness in time (14 years prior to this adjudication, and 9 years prior to the last date on which Plaintiff was insured) makes reference to it of little probative value with respect to Plaintiff's present functional capacity, and, therefore, it should be considered irrelevant in establishing a *prima facie* case of disability.

However, it must be remembered that, in all cases, the claimant ultimately bears the burden of proof, by a preponderance of the evidence in establishing "disability" under the statute. *Ragan v. Finch*, 435 F.2d 239, 241 (6th Cir. 1970), *cert. denied*, 402 U.S. 986, 91 S.Ct. 1685, 29 L.Ed.2d 152 (1971). This Circuit has, indeed, adopted the rule recognized in other jurisdictions, that a claimant may establish a *prima facie* case of disability by proof of inability to perform his "usual" or "normal" work, or "his particular occupation." *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975). If the claimant succeeds in establishing a *prima facie* case by such proof, then the burden of proving the *claimant's ability* to engage in *some other* substantial gainful activity (existing in the national economy) temporarily shifts to the Secretary, *even though the inability to engage in such other work is, technically, an element of "disability" as defined in the statute.* 42 U.S.C. § 423(d)(2).

In tracing this "burden shifting" rule to its inception, it becomes clear that the device was not developed because of the *irrelevance* of the claimant's ability to engage in certain substantial gainful activities (including remotely held occupations) to the question of a claimant's "disability." Rather, the rule was developed out of fairness, because it would be practically impossible for a claimant to identify *every* substantial gainful activity existing in the national economy, *and thereupon proceed to negate his ability to perform each such activity. Thompson v. Celebrezze*, 334 F.2d 412, 414–15 (6th Cir. 1964) *quoting Ellerman v. Flemming*, 188 F.Supp. 521, 527 (W.D.Mo.1960).

With these considerations in mind, the meaning of "usual" or "normal work", as used in Sixth Circuit cases applying the rule, becomes evident. Usual or normal work must be considered to be an activity which the claimant has engaged in for a substantial period of time, such that he is familiar with the functional capacity required for proper performance of that work, and can, therefore, be reasonably expected to be in a position to negate his ability to properly perform some or all aspects of that work.

In sum, the burden is shifted under the rule because of fairness, in view of the unreasonableness of expecting the claimant to prove a universe of negatives about which he lacks familiarity and access to proof. But when it is fair to require the claimant's proof in the first instance, such as when the claimant is in fact in a position to prove the negative regarding a particular gainful activity, then there is no longer any reason for abatement of the claimant's ultimate burden of proof on the question of "disability" under the statute, at least with respect to the burden of going forward with proof of inability to perform that particular activity.

The burden shifting rule enunciated by the Sixth Circuit should not be construed to achieve a contrary result. Indeed, it would appear that if Plaintiff's interpretation of the rule were to be accepted, so as to effectively exclude reference to anything other than *immediate career work* as "usual work" under the rule, then many claimants, including claimants in Plaintiff's position, would be relegated to carrying the impossible burden of proof which the rule was intended to avoid. That is, claimants (such as Plaintiff) who have engaged only in a variety of occupations for substantial, but nonetheless relatively short periods of time, could not be said to have *any* "usual work" under Plaintiff's interpretation and, thus, such claimants would not in the first instance be in a position to prove the inability to perform any specific work, in order to establish a *prima facie* case of disability under the rule.

The Court is mindful that, when the proximity in time between the prior work and the date of adjudication (or last date of insured status) becomes attenuated to a great degree, the similarity between the prior work and present work existing in the national economy which bears the same designation, might be lost by intervening advancements in the technical arts which define the functional capacity required for such designated work. Moreover, work held very briefly at any time before the onset of the claimant's impairment does not necessarily demonstrate the claimant's ability to gainfully engage in that or similar activity with or without the impairment. Apparently, it is these two factors (each suggesting the *irrelevance* of certain prior work to the ultimate question of disability) upon which Plaintiff challenges the Magistrate's and ALJ's reference to Plaintiff's occupation as a grinder and punch press operator in 1966–67.

However, the applicable regulations reasonably account for such factors in defining "vocationally relevant past work." The regulations ordinarily direct that extremely remote occupations (i. e., held more than 15 years prior to the date of adjudication or last date of insured status) and very brief occupations (i. e., held "sporadically or for brief periods") be disregarded as vocationally irrelevant. 20 C.F.R. § 404.1508. Within these functions, the Court concludes that both the regulation and the statute, 42 U.S.C. § 423(d)(2)(A), suggest that the present ability to do "previous work," without regard to the specific remoteness or brevity of such experience, is relevant to the inquiry into functional capacity and disability. If the prior work is relevant, and it is fair to require the claimant's proof with respect to such work in the first instance, by virtue of his familiarity with such work, then reference to "vocationally relevant past work" as "normal" or "usual" work, in determining whether the claimant has established a *prima facie* case, is not inappropriate.

■ Although it is not exactly clear how many months Plaintiff was employed as a

grinder and punch press operator, he did demonstrate more than adequate familiarity with the nature and functional requirements of the occupation, before the ALJ (T. 57–59, 124), so as to be reasonably expected to be able to prove his inability to perform that work. It appears, therefore, that the Magistrate's reference to Plaintiff's "vocationally relevant past work" as a grinder and punch press operator, in determining that Plaintiff had failed to establish a *prima facie* case of disability, was not in error.

Although the Court overrules Plaintiff's three specific objections to the Magistrate's Report, each of which challenges the Magistrate's understanding or application of the law, the Court finds that Plaintiff's general objection, when understood as a request for a *de novo* determination of the Magistrate's recommendation under 28 U.S.C. § 636(b)(1), *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), is well taken and should be sustained.

█ The Court concludes that Plaintiff did establish a *prima facie* case of disability by proof of a medical impairment rendering him unable to perform his "usual work," including his "vocationally relevant past work" as a grinder and punch press operator. The Court reaches this conclusion upon Plaintiff's own subjective testimony regarding the degree and frequency of disabling pain he has experienced, (T. 43–47, 49–51, 52, 54–56, 57–59) which is wholly corroborated by the medical diagnostic finding of Dr. Schmitt[1] (as to both extant medical cause and severity of pain) (T. 115), and generally corroborated by, or not inconsistent with, the diagnostic findings of every other physician of record (at least as to the existence of medical impairments which might produce severe disabling pain).

As the Magistrate suggests, the ALJ concluded that Plaintiff's medical impairment was not sufficient to disable him from performing as a grinder and punch press operator, as he had done in 1966–67 (and it

would, therefore, appear that the ALJ found Plaintiff had failed to establish a *prima facie* case of disability). ALJ Finding # 6 (T. 19). However, the only possible support in the record for such conclusion is the ALJ's primary observations of the Plaintiff's demeanor and kinetic abilities during the hearing, and the testimony of the vocational expert, Dr. Walsh.

With respect to Plaintiff's activity during the hearing, the ALJ said:

> His impairments have been diagnosed a [sic] degenerative disc disease at C5–C6 and mild anxiety. The former impairment causes pain in his neck and arms. However, the Administrative Law Judge cannot conclude that his pain is of such frequency, duration, or severity to preclude sedentary activity. At the hearing while the claimant was observed to walk with a slow and stiff gait, no difficulty was observed while he was in a seated position. He was able to concentrate and communicate without any apparent adverse reaction from pain. He takes a prescribed pain medication, which is apparently effective in controlling any pain he experiences. Therefore, it is concluded that his allegations of constant severe pain is not credible.

(ALJ Decision at 4, T. 18).

Assuming the correctness of each of the ALJ's primary observations, and his conclusion about the incredibility of Plaintiff's claim of "constant severe pain" (even though Plaintiff does not appear to have ever made such claim (*see* T. 46)), it does not follow in any sense that Plaintiff's pain is not "of such frequency, duration, or severity to preclude sedentary activity," or, more importantly, that it would not preclude performance in more exacting "light work", by which label Walsh described Plaintiff's past work as a grinder. At best, the ALJ's observations merely support the conclusion that Plaintiff's pain does not disable him from seated testimony during an administrative hearing. This is far re-

---

1. The Court notes that for some unexplicable reason, both the ALJ and the Magistrate completely ignored Dr. Schmitt's report when re-

viewing the evidence in their respective decision.

moved from the necessary conclusion that Plaintiff's pain does not disable him from the additional activity that accompanies grinding and punchpress operation (i.e., additional mobility and strength which Plaintiff's vertebral disease would limit, see ALJ Finding #4, T. 19) or even sedentary activity (i. e., reaching, pushing, pulling, manipulating, and a certain amount of walking).

■ Walsh's expert opinion on Plaintiff's ability to return to his past work as a grinder does present a more difficult question. As a vocational expert, his testimony alone may be considered substantial evidence sufficient to support a "no disability" decision. *Poore v. Mathews*, 419 F.Supp. 142, 145 (D.Neb.1976). However, where the record conclusively shows that the expert is mistaken regarding the specific functional capacity required for performance in the *claimant's* past work (as opposed to requirements for similar work existing in the national economy), then such opinion is not deserving of any weight in determining whether the Plaintiff has established a *prima facie* case. This is not to say that the expert's opinion is discounted for lack of credibility or qualification; rather, it is simply recognized that his opinion is not directed to the particular functional demands of the specific work experience in question, and, therefore, his opinion is unrelated to the question whether the claimant has established a *prima facie* case.

That Walsh was in fact mistaken about the requirement for *Plaintiff's* past work (as opposed to requirements for similar work existing in the national economy) is shown by Walsh's classification of such work as *"light* to heavy in nature" (T. 64). By Walsh's own definition, which parallels that set forth in the regulations, work involving the *frequent* lifting of weights up to 20 pounds, and the occasional lifting of *maximum* weights in excess of that

amount, as in Plaintiff's past work, is not in any sense "light," but "medium to heavy" work. 20 C.F.R. § 404.1510. Apparently, either Walsh misunderstood Plaintiff's testimony (*compare* the ALJ's hypothetical [2] and Walsh's answer T. 63–64, *with* Plaintiff's testimony and exhibit 22 p. 3, T. 58, 124) to suggest only *occasional* lifting of *maximum* weights up to 20 pounds, or Walsh based his opinion on the requirements for *other similar work in the national* economy. But in either case, Walsh's testimony is unrelated to Plaintiff's proof of the inability to perform in the past work which *Plaintiff* had done, and, thus, Walsh's testimony is not directed to the contradiction or impeachment of any element of Plaintiff's *prima facie* case of disability.

■ With recognition of the inaccuracies in Walsh's testimony and the conclusions drawn from the ALJ's observations, it is clear that there remains *no evidence*, much less substantial evidence, to support the ALJ's finding that Plaintiff is able to return to his vocationally relevant past work as a grinder and punch press operator. On the contrary, it appears that Plaintiff did establish a *prima facie* case, and the burden thereupon shifted to the Secretary to go forward in establishing Plaintiff's ability to perform other work existing in the national economy.

Although it is not altogether clear from the ALJ's findings (T. 19), it might be said that the Secretary carried this burden, with evidence from Walsh, regarding a variety of available sedentary jobs in which Plaintiff might engage (T. 65–66), and that the ALJ alternatively based his "no disability" decision upon this ground. The Court assumes that this was the case, at least at the time of the ALJ's decision. (*See* the second half of ALJ Finding #6, T. 19).

---

**2.** The Court notes that the hypothetical question used to elicit Walsh's opinion on Plaintiff's ability to perform as a grinder and punch press operator, *as described in the ALJ's decision* (T. 18), *is diametrically opposed in parts to Dr.* Arnold's residual functional capacity evaluation, (T. 109–10) upon which it was allegedly

based, and also failed to include the fact of cervical vertebral disease, the existence of which is not disputed. However, the transcript of the hearing indicates that the hypothetical *that was actually used did not contradict Ar-*nold's evaluation, and did include reference to the cervical condition. (T. 63–64)

Nonetheless, there were two further matters presented to the Appeals Council which, in light of the preceding discussion, require that the case be remanded to the Secretary. First, while the Goldsmith report "does not establish a more severe, sustained loss of function" than that recognized by the ALJ, the Court has concluded that the ALJ erred in finding no loss of function pertinent to Plaintiff's "vocationally relevant past work" as a grinder and punch press operator. Since the Secretary's resulting burden must, therefore, be carried with respect to *other* substantial gainful activities, the Goldsmith report takes on new significance. Specifically, the Goldsmith report states:

> If he is medically unable to perform manual labor, I do not believe that he can be retrained to perform any substantial gainful employment in the national economy.

(T. 8). Thus, if Plaintiff cannot return to his past work because of medical impairments, then the implication of the Goldsmith as well as the Schmitt report (T. 115), that Plaintiff cannot engage in other gainful activities because of mental impairments limiting his susceptibility to training for new work (including the sedentary jobs enumerated by Walsh, without benefit of Goldsmith's opinion) must be considered. The second half of the ALJ's Finding #6, therefore, does require reconsideration in light of the Goldsmith report. A complete understanding of the implications and limitations of the Goldsmith report may require the taking of additional evidence, the opportunity for which was denied through summary consideration of that report by the Appeals Council.

Second, upon recognition of the ALJ's error regarding Plaintiff's ability to engage in "vocationally relevant past work," the applicability and application of the new Social Security regulations, effective February, 1979 (which would appear to direct a decision of "disability" in Plaintiff's case, if he is unable to perform "vocationally relevant past work") also require reconsideration. *See*, 20 C.F.R. Pt. 404, Subpt. P., App. 2. The Appeals Council did not articulate its thinking with respect to Plaintiff's case under the new regulations, but simply stated that it "found no reason to disturb the hearing decision." (T. 4) The applicability and application of the new regulations would appear to require, at the minimum, more detailed findings of fact regarding the skill requirements for, and skill transferability from Plaintiff's past work, *Cf.* 20 C.F.R. §§ 404.1508, 404.1511, and, perhaps, require the taking of additional evidence. The Court lacks sufficient expertise to make such findings on the record before it.

Therefore, the Court finds that the error in the ALJ's assessment of evidence with respect to Plaintiff's ability to perform "vocationally relevant past work," the added significance of the Goldsmith report in light of that error, and the lack of an articulated basis for failing to otherwise reach a "disability" decision seemingly required by new regulations, taken together, constitute good cause for remanding this case to the Secretary.

Accordingly, the Magistrate's recommendations are accepted in part and rejected in part. Plaintiff's and Defendant's Motions for Summary Judgment are deemed not well taken and are overruled. The case will be remanded to the Secretary for further proceedings consistent with this decision, including, to the extent necessary, the taking of additional evidence on Plaintiff's alleged mental impairment, and the development of additional findings with respect to the applicability and application of the new regulations.

Wherefore, the captioned cause is ordered remanded to the Defendant for further proceedings as set forth above, this Court having accepted the Magistrate's Report in part and overruled same in part and, further having overruled Motions for Summary Judgment filed by the Plaintiff and the Defendant.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.