R. Ernest HUTCHINSON, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. C–3–79–195.

United States District Court, S. D. Ohio, W. D.

March 1, 1982.

Steven B. Horenstein, Dayton, Ohio, for plaintiff.

Joseph E. Kane, Asst. U. S. Atty., Columbus, Ohio, for defendant.

DECISION AND ENTRY SUSTAINING DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION OF THE MAGISTRATE; MAGISTRATE'S REPORT AND RECOMMENDATION REJECTED IN ITS ENTIRETY; PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OVERRULED; DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OVERRULED; CASE REMANDED FOR FURTHER PROCEEDINGS; TERMINATION ENTRY

RICE, District Judge.

I. INTRODUCTION

This matter is before the Court pursuant to Defendant's objection, filed pursuant to 28 U.S.C. § 636(b)(1)(C), to the Magistrate's Report and Recommendation that Defendant's motion for summary judgment be overruled, and that Plaintiff's motion for summary judgment be sustained. A synopsis of the history of this case is set forth below.

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on November 29, 1977, alleging that he had been disabled since September 1, 1974, due to emotional problems, extreme hypertension, anxiety reaction and a nervous breakdown. The claims were de-

nied initially and upon reconsideration by the Social Security Administration (SSA), whereupon Plaintiff requested a hearing. On January 4, 1979, a hearing was held before an Administrative Law Judge (ALJ), before whom Plaintiff appeared with his wife and attorney. In addition, the ALJ received testimony from Dr. James L. Titchener, a psychiatrist, and George E. Parsons, a vocational expert. On January 24, 1979, the ALJ rendered a decision finding that Plaintiff was not under a disability and was not entitled to benefits. Plaintiff then requested review by the Appeals Council, and the Council affirmed the ALJ's decision on April 20, 1979.

On May 9, 1979, Plaintiff filed his complaint with this Court, seeking judicial review of the administrative decision. The matter was referred to the U.S. Magistrate on May 10, 1979, pursuant to 28 U.S.C. § 636(b)(1). Upon cross motions for summary judgment, the Magistrate, in a "Report and Recommendation" dated August 29, 1980, recommended that Defendant's motion for summary judgment be overruled, and that Plaintiff's motion for summary judgment be sustained, for the reason that the ALJ's decision was not supported by substantial evidence.

Defendant then filed a motion to review the Report of the Magistrate on September 12, 1980, pursuant to 28 U.S.C. § 636(b)(1)(C).

## II. DE NOVO REVIEW

■ In reviewing the decision of the Secretary, the Magistrate's task is to determine if that decision is supported by "substantial evidence." Under 28 U.S.C. § 636(b)(1)(C), this Court, upon objections being made to the Report of the Magistrate, is required to make a de novo review of those recommendations of the Magistrate's Report to which objection is made. This de novo review, in turn, requires this Court to re-examine all the relevant evidence, previously reviewed by the Magistrate, to determine whether the findings of fact by the Secretary are supported by "substantial evidence." 42 U.S.C. § 405(g);

Parish v. Califano, 642 F.2d 188, 189 (6th Cir. 1981). The Supreme Court has stated that substantial evidence means:

[M]ore than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ To obtain benefits under the Social Security Act, the burden is initially on the claimant to show disability which prevents him from performing his usual work. The disability must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C). Once the claimant establishes a prima facie case of disability, the burden shifts to the Secretary to go forward with proof that the claimant has residual capacity for substantial gainful employment, and that there are jobs in the national economy which the claimant can perform. Young v. Califano, 633 F.2d 469, 470 (6th Cir. 1980); Slaven v. Harris, 508 F.Supp. 280, 283 (S.D.Ohio 1981). To meet this burden, the Secretary must receive evidence to show that the claimant can engage in substantial gainful work in light of the claimant's age, education, work experience, and physical condition. 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B). The preferred method of receiving such evidence is through the testimony of a vocational expert. O'Banner v. Secretary of Health, Education and Welfare, 587 F.2d 321 (6th Cir. 1978).

As the ALJ aptly stated, the record contains "voluminous medical evidence" on Plaintiff's mental impairment. (T. 25). Said evidence must be summarized and restated herein only to the extent that it clarifies the ALJ's decision, the Magistrate's Report and the Defendant's objections thereto.

The evidence indicates that Plaintiff was born on February 14, 1942, is in good physical condition and is married and the father of two children. (T. 42–43). He earned a

high school diploma while serving in the Navy in the early 1960's (T. 44), and between 1963 and 1969 he worked at Frigidaire and Chrysler AirTemp, primarily as a welder. (T. 51–52). During that period he also worked briefly as a real estate salesman. (T. 50). Between 1969 and 1971, Plaintiff worked as a sales representative for Huber Homes (T. 53), and from 1971 through 1974 he ran, apparently quite successfully, his own real estate office. (T. 55–56). However, Plaintiff stopped working after 1974 due to his psychological problems. He claims to have made two unsuccessful attempts to work in 1977 (T. 57, 70–71), and also attended, but did not complete, an electronics course in 1978. (T. 45). Plaintiff also claimed that he was unable to get along with others (T. 65), has shaking spells (T. 72), and has difficulty remembering and concentrating. (T. 72–73). These symptoms were confirmed, to some extent, by Plaintiff's wife in her testimony. (T. 85).

The medical evidence indicates that Plaintiff was hospitalized a number of times between 1974 and 1976, and apparently attempted to take his life twice during that period, through an overdose of medication.

Four medical reports from the Veterans Administration Hospital outline Plaintiff's psychological problems. A report by Dr. Mathews of September 10, 1975, stated that Plaintiff had attempted suicide in 1974, had suicidal tendencies after admission to the hospital, but was oriented to time, place and person, and was alert and responsive. Although he was hyperactive during interviews, he gradually improved and was discharged with no work limitations. The final diagnosis was depressive neurosis. (T. 184–85).

A report by Dr. Aceituno, dated January 27, 1976, diagnosed Plaintiff as suffering from a schizoid personality with depression, anxiety and obsessive-compulsive features. However, the report stated that he was "alert and neither confused nor depressed," and, at discharge, was mentally competent and could return to his previous work. (T. 186–87). Similarly, a report dated August 6, 1976, by Dr. Proda, diagnosed Plaintiff as suffering from anxiety neurosis with depression and passive-aggressive personality. Once again, however, Plaintiff was found to be mentally competent at discharge and could return to work. (T. 188–89).

The fourth and final report from the VA, by Dr. Pavig, dated November 26, 1976, diagnosed Plaintiff as suffering from depressive neurosis, but was alert and well-oriented, save for suicidal statements. He left the hospital against medical advice to seek private treatment in the form of electric shock therapy. Nevertheless, he was, once again, found to be mentally competent at discharge with no work limitations. (T. 193–94).

Dr. Smith has also treated Plaintiff since 1974. In a brief report and a letter, Dr. Smith stated that Plaintiff was suffering from manic depression, and opined that he was unable to hold any type of job. (T. 190, 228).

Plaintiff has also been treated at the South Community Mental Health Center. A report from the Center, dated February 1, 1978, stated that Plaintiff was suffering from manic-depression, but that he was friendly, verbal and responsive, and that his short-term and long-term memories seemed to be intact. However, the report concluded that he "was experiencing no growth at best, and very possibly regressing." (T. 206–07).

Finally, Dr. Tangeman performed a psychological evaluation on Plaintiff on May 27, 1977. The diagnosis was psychoneurotic disorder of a depressive type, with manic depressive features. Dr. Tangeman felt that there was a need for psychiatric treatment, but that he should be involved in a day to day work situation in order to begin an adjustment back toward employment. He concluded that Plaintiff "has good skills and shows potential for training if his emotional condition stabilizes." (T. 216–17).

At the hearing, the ALJ called Dr. Titchener to assist in evaluating the considerable medical evidence in the record. (T. 93). Dr. Titchener, who only reviewed the file

and did not examine Plaintiff (T. 94), characterized the medical evidence as "very conflicting and difficult to clarify." (T. 95). The evidence, he argued, supported a diagnosis of depression, but there were only "illusions" to manic depressive psychosis and schizophrenia (T. 95–96). Dr. Titchener stated that the medication Plaintiff said he was taking (T. 63) was an appropriate treatment for anxiety and depression. (T. 99). Finally, he stated that Plaintiff lacked confidence and poise, but could probably work as an assembler in a factory. (T. 100).

Dr. Parsons also testified at the hearing. Upon questioning from the ALJ, Parsons stated that if Plaintiff had correctly described his symptoms and limitations during the hearing, he could engage in no work. (T. 105). The ALJ further asked if Plaintiff could engage in work if, in contrast, it were assumed that he suffered from neurotic depression resulting in lack of poise and confidence. Parsons answered in the affirmative. (T. 107). Plaintiff's attorney asked Parsons whether Plaintiff could engage in work, assuming he suffered from neurotic depression, such that it interfered substantially with his ability to concentrate and remember, that he avoided contact with others, and was substantially restricted in his daily activities. Parsons answered this question in the negative. (T. 108).

In his decision, the ALJ first summarized the extensive medical evidence in the record. (T. 20–24). Based on this evidence, he concluded (not surprisingly) that Plaintiff did have "a significant mental impairment." (T. 25). After pointing out that virtually all of the medical reports stated that Plaintiff could return to work (T. 25), he summarized the testimony of Dr. Titchener and held that said testimony was "in accordance with the weight of the evidence in the record." (T. 25). The statements of Plaintiff and his wife during the hearing were "not fully accepted as a correct statement of the claimant's condition." (T. 25). Based on Parson's testimony, the ALJ concluded that while Plaintiff could not resume his prior work as a real estate salesman or an automobile salesman, he could engage in his prior work as a factory assembler and

welder, *or* work as an inspector, material lister and in other positions of a relatively routine nature requiring little contact with others. (T. 26). Hence, the ALJ found Plaintiff not to be disabled. (T. 26–27).

The Magistrate in this case also summarized the medical evidence (Report at 3–7), but, unlike the ALJ, concluded that:

> The medical evidence in the record demonstrates that Plaintiff does have a psychological impairment, although there is conflicting evidence concerning the severity of that impairment. In his decision, the ALJ relied upon medical reports in the record which indicated that Plaintiff was not restricted in returning to his former employment. However, the facts in the case demonstrate that Plaintiff's psychological problem was perceived by Plaintiff as being severe enough to warrant his attempting suicide on several occasions. Furthermore, Plaintiff's condition was perceived by Dr. Smith as being severe enough to warrant electro-convulsive therapy (E.C.T.). Although the Courts are not to interpret the Social Security Act so broadly as to equate it with unemployment compensation, the Act is nevertheless to be construed liberally. *Polly v. Gardner*, 364 F.2d 969 (6th Cir. 1966).

> The Court finds that the Plaintiff meets the requirements found in the Listing of Impairments under 20 C.F.R. § 404.1503(d), Subpart P, App. 1, Section 12.04(A)(2), (6)(B) (1969).

Report at 8. Based on his review of the evidence, the Magistrate recommended that Plaintiff's motion for summary judgment be sustained, and that Defendant's summary judgment motion be overruled. *Id.*

Defendant advances two objections to the Magistrate's Report and Recommendation. First, he argues that the Magistrate went beyond this Court's scope of review of an ALJ's decision when he applied, *sua sponte*, the SSA regulations. That is, the Secretary contends that the Magistrate engaged in a *de novo* reexamination of the record, rather than determining if the Secretary's decision

was supported by substantial evidence. Second, the Secretary argues that the ALJ's findings of fact *are* supported by substantial evidence and should, accordingly, be accepted as conclusive by this Court.

After reviewing the extensive and detailed record in this case, the Court finds Defendant's second objection to be well taken. There is no question, of course, that mental impairments, standing alone from illness or other disorders, can be disabling. *Branham v. Gardner*, 383 F.2d 614, 618 (6th Cir. 1967); *Ross v. Gardner*, 365 F.2d 554, 558 (6th Cir. 1966). The Secretary does not contest the fact that Plaintiff is suffering from *some* degree of mental illness. Rather, the central issue facing the ALJ was whether said illness prevented Plaintiff from performing his past work *or* engaging in other work. As previously noted, the ALJ concluded that Plaintiff could perform his past work as a welder or factory assembler, or engage in other substantial gainful employment not requiring frequent contact with other persons. This Court finds the ALJ's conclusion to be supported by substantial evidence.

As previously summarized in this opinion, every medical report concerning Plaintiff agreed that Plaintiff was suffering from some degree of neurosis. In addition, however, virtually every report (e.g., those by Drs. Mathews, Aceituno, Pavig, Proda and Tangeman) found Plaintiff to be alert and responsive and capable of returning to work. Indeed, the only opinion to the contrary was by Plaintiff's own physician, Dr. Smith, who stated that his patient was incapable of returning to work. Normally, the views of a doctor who has treated a claimant over a long period are entitled to greater weight than the reports of doctors who have seen the claimant for shorter periods. *Stamper v. Harris*, 650 F.2d 108, 111 (6th Cir. 1981). This maxim cannot apply to Smith's reports herein, however. The record indicates that Smith filed a very brief report (T. 190) and two briefer letters (T. 228, 259) stating that Plaintiff was disabled. The ALJ, who did summarize Smith's views in his decision (T.

21, 23), was entitled to give less weight to those views, given the brevity of Smith's reports, and the failure of said reports to adequately detail the underlying medical basis for the conclusions reached therein. In short, there was substantial evidence to support the ALJ's resolution of a conflict of views among the medical reports. *LeMaster v. Weinberger*, 533 F.2d 337 (6th Cir. 1976).

In addition, the ALJ properly questioned the vocational expert, and properly relied on answers to these questions. As already indicated, the expert was first asked to assume that everything the Plaintiff said was true. He was then asked to assume only that Plaintiff's depression led to a lack of poise and confidence. To this latter question, the expert responded that Plaintiff could engage in work, particularly work where he would not have to deal with the public. (T. 106).

There is substantial evidence in the record to support the ALJ's reliance on the latter, but not the former, question. Both Plaintiff and his wife testified at the hearing as to his memory impairment and his inability to work with others. However, the ALJ accurately pointed out that there were numerous factual inconsistencies between their versions of various events (T. 25 & n.1). Moreover, Plaintiff himself stated that he might be able to work in a factory job. (T. 64–65). Thus, there was a basis for the ALJ not to fully credit Plaintiff's testimony.

It is true, as Plaintiff's attorney pointed out to the ALJ (T. 110), that unsuccessful attempts to return to work mean that less evidence is necessary to support a finding of disability. *See, Walston v. Gardner*, 381 F.2d 580, 586–87 (6th Cir. 1967). However, the circumstances surrounding Plaintiff's attempts to return to work in 1977 and 1978 are hardly clear. First, Plaintiff testified that he worked briefly selling real estate in 1977, putting in about three hours a week, but quit due to a failure to make any sales. (T. 57). Plaintiff's wife, who was not present during her husband's testimony (T. 75), stated that he quit at the time because

"he just couldn't work." (T. 76). Second, Plaintiff testified that he arranged to work as a salesman for Superior Homes in Houston, Texas, but that he wrecked his car in an accident on the way there. He did not mention actually working in Houston. (T. 70–71). In contrast, Plaintiff's wife stated that the car accident occurred on the way *back* from Houston, that he had worked for a very short time there, but quit because he "couldn't take it." (T. 78). Finally, Plaintiff attended, but did not complete, an electronics course in 1978. He stated that he drove to the school on a daily basis, but quit due to discomfort from an eye allergy. (T. 46). The ALJ noted these various versions of Plaintiff's attempts to work and return to school. (T. 22–23). As the above factual summary indicates, it was not unreasonable for the ALJ to conclude that Plaintiff's attempts to return to work or school could not be unequivocably characterized as "unsuccessful" in nature. Hence, the *Walston v. Gardner* rule, with respect to the necessity of a lesser showing of evidence, need not apply to the case herein.

▮ For these reasons, this Court cannot accept the Magistrate's review of the record. The Magistrate, as quoted above, stated that Plaintiff's two suicide attempts, and Dr. Smith's prescription of electric shock treatments, suggested that the ALJ's decision was not supported by substantial evidence. Report at 8. However, neither the suicide attempts nor said treatments, by themselves, support such a conclusion. There is substantial evidence in the record to support the ALJ's factual finding that Plaintiff's mental impairment, while it existed, was not so severe so as to prevent Plaintiff from resuming his prior work as a welder or factory assembler, *or* to engage in other substantial gainful work. Accordingly, Defendant's second objection to the Magistrate's Report and Recommendation is well taken.

An extensive discussion of Defendant's first objection to the Report, pertaining to the Magistrate's application of the SSA regulations, is unnecessary. The Magistrate held that, pursuant to 20 C.F.R. § 404.-1503(d) (1979),[1] Plaintiff met the requirements found in the listing of impairments of 20 C.F.R., Subpart P, App. 1, § 12.-04(A)(2),[2] and, hence, was disabled. Report at 8.

The cited regulations became effective on February 26, 1979, *see* 43 Fed.Reg. 55349 (1978), approximately a month after the ALJ's decision in late January of 1979.

---

1. Does the individual have any impairment(s) which meets or equals those listed in Appendix 1? Where an individual's impairment(s) meets the duration requirement and is either listed in Appendix 1 or is determined to be medically the equivalent of a listed impairment, a finding of disability shall be made without consideration of the vocational factors.
20 C.F.R. § 404.1503(d) (1979).

2. The section, in full, reads as follows:
12.04 Functional nonpsychotic disorders (psychophysiologic, neurotic, and personality disorders; addictive dependence on alcohol or drugs). With both A and B:
A. Manifested persistence of one or more of the following clinical signs:
1. Demonstrable and persistent structural changes mediated through psychophysiological channels (e.g., duodenal ulcer); or
2. Recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory; or

3. Persistent depressive affect with insomnia, loss of weight, and suicidal preoccupation; or
4. Persistent phobic or obsessive ruminations with appropriate, bizarre, or disruptive behavior; or
5. Persistent compulsive, ritualistic behavior; or
6. Persistent functional disturbance of vision, speech, hearing, or use of a limb with demonstrable structural or trophic changes; or
7. Persistent, deeply ingrained, maladaptive patterns of behavior manifested by either:
a. Seclusiveness or autistic thinking; or
b. Pathologically inappropriate suspiciousness or hostility;
B. Resulting persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people.
20 C.F.R. Subpart P, App. 1, § 12.04 (1979).
The Magistrate specifically cited "Section 12.04(A)(2), (6)(B)." Report at 8.

However, the regulations *were* effective while the case was pending before the Appeals Council. In its decision of April 20, 1979, denying Plaintiff's appeal of the ALJ's decision, the Council stated that it had reviewed the case under the new regulations, "but found no reason to disturb the hearing decision." (T. 7).

· As previously stated, Defendant objects to the manner of the Magistrate's *sua sponte application* of the regulations, rather than to his *reviewing* the Appeals Council's application of the regulations. Defendant's characterization of the Magistrate's report seems valid. While the regulations cited by the Magistrate are, apparently, the appropriate ones to apply in this case, said regulations are nowhere expressly cited, or applied, in the record. Instead, there is only the Appeals Council's general statement, quoted above, that the ALJ's decision was reviewed under the new regulations. Given this characterization of the Magistrate's report, Defendant's first objection is well taken. The better practice, in cases such as these, is to remand the matter for additional consideration by the SSA, if a Court feels the SSA incorrectly applied, or inadequately dealt with, relevant regulations. *See, Slaven v. Harris, supra*, 508 F.Supp. at 287.

Such a remand is the appropriate course in the matter herein. While this Court holds that the *ALJ's* decision was supported by substantial evidence, it is possible that application of the regulations, concerning mental impairments (cited by the Magistrate), could direct a different outcome on Plaintiff's claim. The regulations, *see* footnotes 1–2, *supra*, direct a finding of disability, if appropriate criteria are met, *without* consideration of vocational factors. Since the ALJ's decision relies to a large extent on the vocational evidence submitted by Dr. Parsons, it is difficult, if not impossible, for this Court to review the propriety of denying Plaintiff's claim under the regulations, *based on the ALJ's decision alone.* This difficulty is exacerbated by the Appeals

Council's brief statement, quoted above, that application of the regulation did not require the ALJ's decision to be disturbed. In short, while this Court is loath to prolong this case more than it already has, the record is simply inadequate to determine if the denial of Plaintiff's claims, under the regulations becoming effective on February 26, 1979, was supported by substantial evidence. Hence, a remand to the Secretary is appropriate for further development of reasons, and factual findings, if necessary, regarding the denial of Plaintiff's claim under the regulations.[3] *See generally, Slaven v. Harris, supra*, 508 F.Supp. at 287 (remand appropriate in virtually identical circumstances to the case herein).

## III.  CONCLUSION

Based on the above analysis of facts and legal principles, the Court finds that the objections of Defendant to the Report and Recommendation of the Magistrate are well taken, and the Court finds that said Report and Recommendation should be rejected in its entirety. It is so ordered.

WHEREFORE, based on the aforesaid, the Court overrules both Plaintiff's and Defendant's motions for summary judgment, and remands the matter to the Defendant, for further proceedings as set forth above.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

**3.** The relevant regulations cited by the Magistrate remained unchanged in the recent recodification of the SSA regulations. *Cf.* 20 C.F.R. § 404.1503(d) & Subpart P, App. 1, § 12.04 (1979) *with* 20 C.F.R. § 404.1520(d) & Subpart P, App. 1, §. 12.04 (1981). Hence, no retroactivity problems are presented. *Cf. Colyer v. Harris*, 519 F.Supp. 692 (S.D.Ohio 1981).