**Aron D. MARKOFF, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 84–0193–C.**

United States District Court, D. Massachusetts.

Jan. 21, 1986.

David Engle, Mental Health Legal Advisors Committee, Boston, Mass., for plaintiff.

Richard E. Welch, III, Asst. U.S. Atty., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

The plaintiff, Aron D. Markoff, brings this action against the Secretary of Health and Human Services to challenge concurrent decisions by the Secretary denying the plaintiff's applications for Social Security Childhood Disability Insurance Benefits (hereinafter "CDIB"), 42 U.S.C. § 423, and Supplemental Security Income (hereinafter "SSI"), 42 U.S.C. § 1381a. The plaintiff seeks reversal of the Secretary's decisions pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

The plaintiff first applied for CDIB, based on the insured status of his father, on October 12, 1979. In his application the plaintiff claimed that he has been continuously disabled since February 28, 1969 when, at age 21, he suffered a psychotic breakdown and twice attempted to commit suicide. The Social Security Administration denied the application on January 7, 1980, and the plaintiff did not appeal.

On January 20, 1982 the plaintiff filed a second application for CDIB and an application for SSI as well. In both applications, he claimed an ongoing disability since his breakdown on February 28, 1969. The Social Security Administration denied both applications initially on April 12, 1982 and denied them again, upon reconsideration, on August 13, 1982. On February 3, 1983 Administrative Law Judge Thomas Bennett (hereinafter "the ALJ") conducted a hearing on both the SSI and CDIB claims and, on July 15, 1983, issued decisions on these claims. In his decision on the plaintiff's SSI claim, the ALJ evaluated certain medical evidence in the record and concluded that at no time has the plaintiff been under a disability within the meaning of the Social Security Act, and, accordingly, denied the plaintiff's application. In his decision on the plaintiff's CDIB claim, the ALJ said that the January 7, 1980 determination denying the plaintiff's CDIB claim was final, and that since there was no new and material evidence relating to the CDIB claim, the determination may not be reopened. Despite his avowed decision not to reopen the plaintiff's CDIB claim, however, the ALJ evaluated the February 3 hearing testimony and certain medical evidence, made detailed findings of fact relating specifically to the CDIB claim, and concluded that the plaintiff was not entitled to CDIB because he was not under a disability before he attained age 22. The Social Security Administration Appeals Council approved both of the ALJ's decisions on November 9, 1983.

The plaintiff seeks a reversal of the Secretary's denial of both his CDIB and SSI claims. The Social Security Act gives this Court authority to review a "final decision of the Secretary [of Health and Human Services] made after a hearing." 42 U.S.C. §§ 405(g), 1383(c)(3). The Act further pro-

vides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing ..." and that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g).

The first issue this court must decide is whether it has jurisdiction to review the Secretary's denial of the plaintiff's CDIB claim. The Secretary contends that the ALJ's decision not to reopen the January 7, 1980 determination that the plaintiff is not entitled to CDIB is purely discretionary and, therefore, not reviewable by this Court. The initial CDIB determination became final when the plaintiff did not request reconsideration of his claim within the allotted time. *See* 20 C.F.R. § 404.905. An ALJ's decision not to reopen a final determination of the Secretary generally is not reviewable by the courts. *See Califano v. Sanders*, 430 U.S. 99, 108–109, 97 S.Ct. 980, 985–986, 51 L.Ed.2d 192 (1977); *Rios v. Secretary of Health, Education and Welfare*, 614 F.2d 25, 26 (1st Cir.1980); *Matos v. Secretary of Health, Education and Welfare*, 581 F.2d 282, 285–286 (1st Cir.1978).[1]

The ALJ's July 15, 1983 decision on the plaintiff's January 20, 1982 CDIB claim states that because the plaintiff failed to submit "new and material evidence" since the January 7, 1980 decision on his initial CDIB claim, the case may not be reopened. Notwithstanding the ALJ's statement that the January 7, 1980 decision may not be reopened, however, it is clear from the "notice of hearing" sent to the plaintiff regarding the February 3, 1983 hearing before the ALJ and from the ALJ's July 15, 1983 decision that the ALJ did in fact reopen the case and decide it on the merits. Both the notice of the February 3, 1983

hearing sent to the plaintiff and the ALJ's decision expressly state that the issue to be decided at the hearing was whether Aron Markoff was under a disability as defined in the Social Security Act and, if so, whether the disability began before he attained age 22. *Cf. Rios v. Secretary of Health, Education and Welfare*, 614 F.2d 25, 26 (1st Cir.1980). In his decision on the plaintiff's CDIB claim, the ALJ set forth the five step sequence prescribed by the Social Security Administration Regulations for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 404.920. The ALJ then summarized testimony from the hearing relevant to the merits of the plaintiff's claim and excerpts from medical reports evaluating the plaintiff's mental condition. Most importantly, the ALJ made the following findings of fact: 1) the claimant is the child of the wage earner (his father);[2] 2) the claimant was unmarried at the time his application was filed and is still unmarried; 3) the claimant was dependent on the wage earner; 4) the claimant attained age 22 on February 16, 1970; 5) Prior to attaining age 22, the claimant had no impairment significantly affecting his ability to perform basic work activities; and 6) the claimant is not under a disability which began before he attained age 22. The ALJ closed his evaluation of Mr. Markoff's CDIB claim, saying:

> On the basis of review of the entire hearing record, the [ALJ] concludes that the claimant ... is not shown to be precluded from working in jobs in which he could have only one supervisor during an 8 hour work day, only minimal necessity for communication with fellow employees (other than supervisors) and no occasion for contact with the public ... [T]he claimant has the ability to engage in substantial gainful activity and there-

---

**1.** The Court expresses no opinion as to whether a district court may be able to review an ALJ's decision not to reopen a case where the claimant challenges the Secretary's decision on constitutional grounds. *See Califano v. Sanders*,

430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977).

**2.** The plaintiff's application for CDIB is based on the insured status of his father.

fore, cannot be found to be disabled for purposes of Title XVI.

It is clear from the content and phraseology of the ALJ's decision that he did in fact reopen the Secretary's January 7, 1980 determination of Mr. Markoff's CDIB claim and reconsidered his claim, in light of new testimony and medical evidence, on the merits. I therefore rule that this Court has jurisdiction to review the ALJ's July 15, 1983 decisions on the plaintiff's CDIB claim as well as his SSI claim. *Cf. Reinhart v. Schweiker*, 590 F.Supp. 78 (W.D. Mich.1984); *Brown v. Heckler*, 565 F.Supp. 72 (E.D.Wis.1983).

In his decision on Mr. Markoff's CDIB claim the ALJ found that Mr. Markoff was not disabled before reaching age 22, and in his decision on the plaintiff's SSI claim, the ALJ found that the plaintiff has never been disabled within the meaning of the Social Security Act. The Social Security Act defines disability as:

> [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1), 416(i)(1). The Social Security Administration Regulations, 20 C.F.R. §§ 404.1520, 416.920, provide a five step procedure for evaluating disability:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment? A 'severe impairment' means an impairment 'which significantly limits his or her physical or mental capacity to perform basic work-related functions.' [*See* 20 C.F.R. §§ 404.1521 and 404.921] If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in Appendix 1 of the regulations? If the claimant has an im-

pairment of so serious a degree of severity, the claimant is automatically found disabled.

> These first three tests are 'threshhold' tests. If the claimant is working or has the physical or mental capacity to perform 'basic work-related functions,' he is automatically considered not disabled. If he has an Appendix 1-type impairment he is automatically considered disabled. In either case, his claim is determined at the 'threshhold.' If, however, his ability to perform basic work-related functions is impaired significantly (test 2) but there is no 'Appendix 1' impairment (test 3), the SSA goes on to ask the fourth question.
>
> Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

*See Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir. 1982).

In this case the ALJ found, with respect to both the plaintiff's CDIB and SSI claims that the plaintiff did not have a "severe impairment." *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). In other words, the plaintiff failed to satisfy step two of the disability evaluation procedure. An impairment is not "severe" if it does not significantly limit one's physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.-1521(a), 416.921(a). The regulations expressly provide that "basic work activities" include:

> . . . .
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b).

The findings of the ALJ as to any facts shall be conclusive if supported by "substantial evidence." 42 U.S.C. § 405(g). The principal question this case raises, therefore, is whether there is substantial evidence to support the ALJ's conclusions that the plaintiff did not suffer from a severe impairment before attaining age 22 and did not suffer from such an impairment in 1983. Substantial evidence is that which a reasonable mind, reviewing *the record as a whole*, could accept as adequate to support the conclusion. *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981); *Richardson v. Perales*, 402 U.S. 389, 410, 91 S.Ct. 1420, 1431–32, 28 L.Ed.2d 842 (1971).

As a starting point, this Court acknowledges that it is the duty of the Secretary, not the courts, to weigh the evidence, to resolve material conflicts in the testimony, and to decide the case accordingly. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Keeping in mind its limited duty in cases of this nature, the Court nevertheless rules that there is neither substantial evidence to support the ALJ's findings that the plaintiff did not suffer from a severe impairment in 1983, nor is their substantial evidence to support the ALJ's finding that the plaintiff did not have a severe impairment prior to February 16, 1970, when he reached 22 years of age.

■ It is undisputed in the record that on February 28, 1969, when he was 21 years of age, the plaintiff tried to stab himself in the chest and jump from a third story window. Following these suicide attempts, the plaintiff was hospitalized at the Massachusetts Mental Health Center, an in-patient psychiatric facility. Mr. Markoff's doctor at the Health Center, Dr. Aaron, diagnosed him as suffering from process schizophrenia with an acute exacerbation. In the plaintiff's "discharge summary" (from the Health Center), Dr. Aaron wrote that "Mr. Markoff is a young man with a great deal of fragility in a long-term illness" who when admitted to the Health Center "was seen to be … disheveled, preoccupied and panicked, … grandiosely delusional, hallucinatory and confused." Mr. Markoff began taking strong anti-psychotic medicine in 1969 and was still taking heavy daily doses of anti-psychotic drugs at the time of the 1983 hearing. He was discharged from the Health Center in March, 1970, more than a year after his breakdown.

Each of the psychiatrists who treated or examined Mr. Markoff, with one exception, diagnosed him as schizophrenic. The ALJ specifically found, in his decision on the plaintiff's SSI claim, that the plaintiff suffers from "paranoid schizophrenia, chronic," yet the ALJ also found that this impairment does not significantly limit the plaintiff's ability to perform basic work activities. A review of the reports of the numerous doctors who evaluated Mr. Markoff and the testimony of Mr. Markoff and his mother at the hearing reveal that the ALJ's conclusion that Mr. Markoff can perform basic work activities is not supported by substantial evidence.

In a February 27, 1979 report, Dr. Cott, who has treated the plaintiff since 1974 with megavitamins, reveals a history of major mental illness in Mr. Markoff's family. Mr. Markoff's paternal uncle was institutionalized since age twenty and three other close blood relatives were hospitalized at various times with schizophrenia. Dr. Cott relates that Mr. Markoff has a short attention span, difficulty following sequential orders, and that when under pressure, his memory is impaired and he becomes easily confused. In Dr. Cott's opinion, the plaintiff has been "completely disabled and unable to function" since his discharge from the Health Center. Three years later, on May 19, 1982, Dr. Cott wrote another evaluation of Mr. Markoff. He stated that

[a]t the present time, [Mr. Markoff] continues to have some difficulty following sequential orders, has a short attention span and when he is under pressure, his

memory is somewhat impaired and he becomes easily confused. Because of his condition he is unable to work or in any way to contribute to his own support. Dr. Cott also said that the plaintiff's ability to relate to co-workers is "impaired."

Dr. Goldfarb evaluated the plaintiff on July 2, 1982 and stated that Mr. Markoff "gets confused and has difficulty organizing his thoughts" and is very concerned with the end of the world. In Dr. Goldfarb's opinion, Mr. Markoff "most likely ... is not functional in the job world."

Dr. Goisman evaluated Mr. Markoff on June 21, 1982. Dr. Goisman diagnosed the plaintiff as paranoid schizophrenic and said that the plaintiff has a "delusional belief that he can predict the future" and that the plaintiff's illness has caused "social isolation, poor employability, and a bad self-image." Dr. Goisman also said that the plaintiff responds to supervision "with difficulty," "would be very anxious about work pressure," and that the plaintiff's delusions could interfere with his ability to relate to co-workers and use common sense.

Michael Jablon, a Doctoral Psychology Intern at Boston University who was the plaintiff's primary therapist in late 1982 and early 1983, wrote this evaluation of Mr. Markoff on February 2, 1983:

> Aron is an extremely anxious person who, under stressful situations has great difficulty functioning. He has poor concentration, somewhat looseness of association, severe pressure of speech, and delusioned beliefs concerning his ability to predict future events. Another problem is Aron's inability to maintain good grooming habits.
>
> Taken all together, his ability to be selected for work is minimal because of the combination of his appearance and his lack of interpersonal skills. And the possibility of maintaining a job, in my opinion, is slight because very small amounts of stress cause anxiousness, confusion and losses of memory.

Dr. Cacciola, the only doctor who did not diagnose Mr. Markoff as schizophrenic,[3] said that Mr. Markoff has a severely impaired ability to deal with his feelings which causes constant anxiety and tension in any new or uncertain situation. With respect to Mr. Markoff's future, Dr. Cacciola said:

> I am not particularly hopeful about improvement in this man's emotional functioning even if he enters into some kind of psychotherapy, for the treatment of his emotional difficulties is a very long and difficult one. It would take many years of helping him confront and deal with unacceptable feelings before he would establish control over his emotional functioning.

The only medical evaluations the ALJ relied upon in his decisions on the plaintiff's CDIB and SSI claims were evaluations done by Dr. Mikkelson and Dr. Robbins, each of whom met with Mr. Markoff on only one occasion. Dr. Mikkelson's primary diagnosis was chronic paranoid schizophrenia which, he said, "began insidiously at age 12 and has become progressively worse since that time." Dr. Mikkelson did find that Mr. Markoff was "not acutely psycotic or thought disordered at the time of the interview" and that Mr. Markoff's vocational training program and psychiatric treatment appeared "to be providing him with a certain degree of support and stability." However, the fact that Dr. Mikkelson found that Mr. Markoff's psychoses did not markedly interfere with Mr. Markoff's interview or mental testing with Dr. Mikkelson is not, in light of the record as a whole, substantial evidence which could support a conclusion that Mr. Markoff's impairment does not significantly limit his mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.921(a), 404.1521(a).

Dr. Robbins' evaluation is even less persuasive as support for the ALJ's conclusion. The ALJ relied upon the following language in Dr. Robbins' report:

---

3. Dr. Cacciola diagnosed Mr. Markoff as having a "borderline personality with obsessive compulsive defenses," and said he suffers from "status post psychotic decompensations."

Generally, his intellectual functions have not deteriorated. However, it is clear that his poor attention span and short term memory difficulties relate to his preoccupation with his internal fantasy life rather than any organic deficit. I would say from a purely cognitive standpoint he could function in the open marketplace. However, the severity and chronicity of his underlying emotional difficulties suggest that he is extremely vulnerable to psychotic thinking and hence would continue to require antipsychotic medicine and a very supportive, structured, undemanding work setting in order to function.

The ALJ also relied upon Dr. Robbins' assessment of ability to do work related activities which said that "although under too much stress the claimant will become disorganized and probably psychotic, in a supportive, structured, stable work setting the claimant may be able to carry out routine mechanical jobs without difficulty."

These statements by Dr. Robbins do not in any way support a finding that Mr. Markoff is in fact capable of performing basic work related activities, which include: the use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.921(b), 404.1521(b). The Court notes that Dr. Robbins' assessment of ability to do work related activities also says that "[u]nder customary work pressures [Mr. Markoff] may become extremely anxious and unable to pay attention" and that "[u]nder times of stress [Mr. Markoff] can become psychotic which would severely affect his judgment and understanding of day-to-day events." Dr. Robbins report said that Mr. Markoff requires "emotional

distance and social isolation to maintain control over internal disorganization" and that "[t]his limitation is chronic."

A review of the record not only reveals a lack of substantial evidence to support the ALJ's finding that Mr. Markoff does not suffer from a severe impairment, but also shows that each of the plaintiff's attempts to work in the past have met with failure.[4] In Mr. Markoff's most recent attempt to work, he was fired after two days from his part time position wrapping sandwiches because he could not wrap the sandwiches quickly or tightly enough. Mr. Markoff said in his hearing testimony that his inability to successfully maintain simple, part-time work is due to his becoming nervous, agitated, and confused whenever he is confronted with work pressure. The ALJ's decisions do not address the plaintiff's repeated unsuccessful attempts to work, although courts have held and good sense dictates that such attempts may be seen as evidence of disability. *See Kapp v. Secretary of Health and Human Services,* CA 82–0344–F (D.Mass. 2/20/85); *Hutchinson v. Schweicker,* 535 F.Supp. 962, 967 (S.D. Ohio 1982).

For the above reasons, I rule that the ALJ's decisions on the plaintiff's SSI and CDIB claims that the plaintiff failed to satisfy his burden with respect to step two of the sequential disability evaluation procedure should be vacated. I also rule with respect to both of the plaintiff's claims that he has shown by substantial evidence that he has a functional psychotic disorder which meets the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.03.[5] In other words, the plaintiff has satisfied his burden with respect to step three of the disability evaluation process. The adminis-

---

**4.** The ALJ found that Mr. Markoff "has never engaged in substantial gainful activity [and] has no significant work history."

**5.** 12.03 *Functional psychotic disorders* (mood disorders, schizophrenias, paranoid states). With both A and B:
   A. Manifested persistence of one or more of the following clinical signs:
   1. Depression (or elation); and
   2. Agitation; or

   3. Psychomotor disturbances; or
   4. Hallucinations or delusions; or
   5. Autistic or other regressive behavior; or
   6. Inappropriateness of affect; or
   7. Illogical association of ideas;
   B. Resulting persistence of marked restriction of daily activities and constriction of interests and seriously impaired ability to relate to other people.

trative record clearly shows that the plaintiff has suffered from schizophrenia continuously since February 28, 1969 and that this disorder has manifested itself in agitations, delusions, psychomotor disturbances, and inappropriate affect. The record also clearly shows that as a result of his schizophrenia the plaintiff has been markedly restricted in his daily activities and interests and has had a seriously impaired ability to relate to other people.

Because the plaintiff clearly has satisfied his burden with respect to the first three steps of the disability evaluation procedure, I rule that both the ALJ's decision on the plaintiff's SSI claim and his decision on the plaintiff's CDIB claim should be reversed and vacated and rule that the plaintiff is entitled to Title II benefits retroactive to October 12, 1978, 42 U.S.C. § 402(j)(1)(A), 20 C.F.R. 404.621(a)(1)(i), and Title XVI benefits from January 20, 1980, the date he filed his SSI claim. 42 U.S.C. § 1382(c)(5)(A) and (B); 20 C.F.R. § 416.-501.

Order accordingly.